# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 18, 2025

Lyle W. Cayce
Clerk

No. 23-50890

8fig, Incorporated,

*Plaintiff*,

Newsweek Digital, L.L.C.,

*Intervenor—Appellee*,

*versus*

Stepup Funny, L.L.C., *doing business as* Stepup Funny, *doing business as* AA7 Days; Benlong Hall, L.L.C., *doing business as* Benlong; Calixo, L.L.C.; Ultimate Glam, L.L.C., *doing business as* Glamhiv; Rootstim, L.L.C., *doing business as* Overseas Jar; Spectra Hope, Incorporated, *doing business as* Stepeak, *doing business as* Beautieszilla; Tigris Venture, L.L.C., *doing business as* Venturelaze; Micro Universe, L.L.C., *doing business as* HuanXi; Great Commission University, Incorporated,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-943

No. 23-50890

Before ELROD, *Chief Judge*, and HIGGINBOTHAM and SOUTHWICK, *Circuit Judges*.

PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

Newsweek Digital, LLC ("Newsweek"), a news platform, moved to intervene and unseal the judicial record. The district court granted the motion, and the Defendants appealed.

## I.

## A.

8fig, Incorporated ("8fig") is a technology company that offers to purchase a set amount of projected revenue from e-commerce merchants in exchange for an up-front purchase price. The complaint alleges that 8fig entered into agreements with the Defendant-Appellants and deposited the purchase price to each Defendant-Appellant but that 8fig did not receive the required remittances in accordance with those agreements. Instead, the Defendant-Appellants transferred the funds to a religious movement, World Olivet Assembly (the "Assembly"), closed their bank accounts, and went out of business.

8fig filed this suit under 18 U.S.C. §§ 1964, 1962 and asserted various state and common law claims. In 2023, the parties filed a Joint Agreed Motion to Administratively Close and Seal Proceedings. As recounted by Newsweek:

> In the Motion to Seal, the litigants represented that "a settlement agreement is presently in place that will require some time to complete," and asked the court to close the case and seal all documents "so that the parties may make an effort to resolve their dispute without interference from third-parties." As support for their motion, they contended that "[t]he case contains confidential and proprietary information that could cause harm to the parties named herein if third-parties disseminate the documents in this case, and the parties are in agreement that the nature of the allegations and interest

2

No. 23-50890

from third-party media sources rises to the level to need to seal the case until further notice."

The district court granted the Motion to Seal, and the case settled quickly—before 8fig served any defendant.

## B.

One week after the district court granted the Motion to Seal, Newsweek moved to intervene, urging that the seal "significantly hindered" its reporting. The district court granted Newsweek's Motion to Unseal, finding that Newsweek met the requirements of Federal Rule of Civil Procedure 24(a) and permitting any party to propose a redacted version of any docket entry. Certain defendants filed, and the district court granted, proposed redactions, and the district court denied a motion to extend the filing deadlines. As of the date of this opinion's publication, the district court proceeding has been unsealed for more than one year except for the documents for which redacted versions were filed.

## II.

## A.

Federal Rule of Civil Procedure 24 authorizes intervention by right or by permissive intervention.[1] A putative intervenor without a statutory right to intervene must: (1) file a timely motion; (2) show that they "claim[] an interest relating to the property or transaction that is the subject of the action"; (3) be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) show that "existing parties [do not] adequately represent that interest."[2] "It

---

[1] Fed. R. Civ. P. 24.

[2] Fed. R. Civ. P. 24(a).

is the movant's burden to establish the right to intervene, but 'Rule 24 is to be liberally construed.'"[3] "Federal courts should allow intervention 'where no one would be hurt and the greater justice could be attained.'"[4]

To intervene by permissive intervention, a putative intervenor must show that they are: "(A) given a conditional right to intervene by a federal statute; or (B) [have] a claim or defense that shares with the main action a common question of law or fact."[5] In exercising its discretion to grant or deny permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[6] The gate of intervention remains closed, however, in a jurisdictionally or procedurally defective case.[7]

## B.

We review a district court's denial of a motion to intervene as of right *de novo* and a district court's denial of permissive intervention for clear abuse

---

[3] *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (quoting *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)).

[4] *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)); *see Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *4 (5th Cir. Mar. 22, 2022) (noting "our broad policy favoring intervention" and the intervenor's "minimal burden" (internal quotation marks omitted)).

[5] FED. R. CIV. P. 24(b). While the standard for permissive intervention for a government officer or agency is different, Newsweek is not a government officer or agency.

[6] FED. R. CIV. P. 24(b)(3).

[7] *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513, n.5 (5th Cir. 2016) (citing *Truvillion v. King's Daughters Hosp.*, 614 F.2d 520, 526 (5th Cir. 1980)).

No. 23-50890

of discretion.[8] As the district court's order granted Newsweek's intervention by right, we review it *de novo*.[9]

Appellants argue that there are four procedural and jurisdictional defects: (i) Appellants were never served with the complaint; (ii) the district court lacks personal jurisdiction over the Appellants; (iii) the court lacks subject-matter jurisdiction over the case; and (iv) Newsweek lacks standing to intervene. We take each in turn.

## C.

Federal Rule of Civil Procedure 4 requires that "[i]n General," "[a] summons must be served with a copy of the complaint."[10] Appellants allege that 8fig's failure to serve them was a procedural defect and rightly note that actual notice of insufficient service alone is insufficient to satisfy Rule 4.[11] The rub is that Appellants were sufficiently active in the case to obviate service.[12] They appeared, allowed their attorneys to negotiate a settlement,

---

[8] *OOGC Am., L.L.C. v. Chesapeake Expl., L.L.C.*, 975 F.3d 449, 453 (5th Cir. 2020) (citations omitted).

[9] The timeliness requirement of intervention as of right is typically reviewed for abuse of discretion, but it is reviewed *de novo* where the district court failed to make any findings regarding its timeliness conclusion. *Ford v. City of Huntsville*, 248 F.3d 1139, 2001 WL 85866, at *2 (5th Cir. 2001) (unpublished table decision). The timeliness requirement, however, is not at issue in this case.

[10] Fed. R. Civ. P. 4(c).

[11] *Ayika v. Sutton*, 378 F. App'x 432, 434 (5th Cir. 2010) ("We further note that, although the defendants apparently had actual notice of the insufficient service, the 'defendant's actual notice of the litigation . . . is insufficient to satisfy Rule 4's requirements.'") (quoting *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988)).

[12] *See Trust Co. of Louisiana v. N.N.P. Inc.*, 104 F.3d 1478 (5th Cir. 1997) (holding that participation in trial and failure to raise the issue of sufficiency of service at trial constituted waiver).

No. 23-50890

filed status reports, and invoked the authority of the district court to seal the proceedings. In short, the court did not err.

**D.**

Appellants argue that, in any event, 8fig "never successfully asserted that the court has the specific or general personal jurisdiction over the defendants that is necessary to ensure the suit is free of vice" and that the court lacks personal jurisdiction because 8fig cited no case where an e-commerce platform was subject to specific or general jurisdiction in a state where a customer bought the goods through the sales platform.[13]

This slips past the basic principle that objections to personal jurisdiction may be waived through general appearance when a party makes "some presentation or submission to the court."[14] This can arise:

> from a defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to plaintiff other than one contesting only the jurisdiction or by reason of some act or proceedings recognizing the case as in court.[15]

That is, an action such as filing an application for admission *pro hac vice*, filing for a motion for an extension of time, or a joint notice of appearance are not a general appearance as they do not evince the "seeking, taking, or

---

[13] *See Quick Techs v. Sage Group PLC.*, 313 F.3d 338, 343 (5th Cir. 2002).

[14] *Tango Marine S.A. v. Elephant Grp. Ltd.*, 19 F.4th 808, 813 (5th Cir. 2021) (citing *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1108 (5th Cir. 1985)). Note that the panel in *Tango Marine* "specifically withdr[ew] its interpretation of *Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 159 (5th Cir. 1992)," but that action did not impact the reasoning of the prior opinion. *Tango Marine S.A. v. Elephant Grp. Ltd.*, 28 F.4th 600, 601 (5th Cir. 2022).

[15] *Tango Marine S.A.*, 19 F.4th at 813 (citing *Cactus Pipe & Supply Co.*, 756 F.2d at 1108).

No. 23-50890

agreeing to some step or proceeding in the cause," a prerequisite to a general appearance.[16]

Appellants here took the steps of a general appearance by filing status reports and moving to seal the proceeding, waiving their right to assert a want of personal jurisdiction.[17] The district court had personal jurisdiction.

## E.

Appellants allege that Newsweek lacks standing to intervene because it has not shown an injury in fact fairly traceable to a challenged act and that is likely to be redressed by the requested remedy.

It is a given that Newsweek must have standing to intervene in this proceeding. "An intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."[18] "To establish standing, [a] news agency must show an injury in fact that is fairly traceable to the challenged act and that is likely to be redressed by the requested remedy."[19]

---

[16] *Id.* (quoting *Cactus Pipe & Supply Co.*, 756 F.2d at 1108).

[17] Appellee argues that Fifth Circuit precedent in *Broadcast Music, Inc.* stands for the proposition that a party waived their right to assert a lack of personal jurisdiction when that party allowed their attorney to negotiate a settlement. *See Broad. Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278 (5th Cir. 1987). But negotiating settlement was only one action that the attorney in *Broadcast Music, Inc.* took among many others. That attorney's office also accepted service of deposition subpoenas, and the attorney attended a pretrial conference, moved to withdraw from representation in the case, and was served a motion for continuance due to the addition of another defendant. *Broad. Music, Inc.*, 811 F.2d at 280. Moreover, that attorney was served with a motion and notice of hearing on an impending default judgment. *Id.* We decline to hold that negotiating a settlement alone waives a party's right to assert a lack of personal jurisdiction.

[18] *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017).

[19] *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 926 (5th Cir. 1996).

And "[a]lleged violations of the public right to access judicial records and proceedings and to gather news are cognizable injuries-in-fact sufficient to establish standing," such as a gag order frustrating a journalist's right to gather news.[20] Indeed, a news organization had standing to intervene when a court order directed individuals to "refrain from making written or oral comments about any aspects of any drafts of [a] proposed desegregation plan" because "[t]he district court's orders impede the news agencies' abilities to gather the news and to receive protected speech, abilities which are arguably protected by the First Amendment."[21]

This court has recognized that other federal circuits "have held that news agencies have standing to challenge confidentiality orders in an effort to obtain information or access to judicial proceedings, although they are neither parties to the litigation nor restrained directly by the orders."[22] And we have also found standing to intervene when a putative intervenor was "deprived of information that he [was] uniquely well-qualified to study and publicize in his academic work, and which information he can get nowhere else."[23]

While Newsweek has not been subject to a gag order in this proceeding, it nonetheless has standing to seek intervention. It is true that the district court's order to seal was filed at the request of the parties to facilitate their settlement and once settlement was reached,[24] the order to

_____

[20] *U.S. ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 577 (5th Cir. 2023).

[21] *Davis*, 78 F.3d at 926-27.

[22] *Id.* at 926.

[23] *U. S. ex rel. Hernandez*, 80 F.4th at 577.

[24] 8fig and the Defendants had complied with the terms of a settlement agreement by November 14, 2023.

No. 23-50890

seal had run its course. But that did not diminish Newsweek's right to gather the news.

### III. The District Court's Discretion to Unseal Judicial Records.

### A.

"The public has a common law right of access to judicial records."[25] "Public access serves important interests in transparency and the 'trustworthiness of the judicial process'"[26] and is a "fundamental element of the rule of law."[27] There is a presumption in favor of access to judicial records and "sealing judicial records is . . . heavily disfavored."[28]

A court may seal a judicial record only on a case-by-case, document-by-document, line-by-line basis[29] and must balance "the public's common law right of access against the interests favoring nondisclosure."[30] The weight of the public's right to access information is even greater when the case involves matters of public interest.[31] But the presumption in favor of access to judicial records has not been assigned any particular weight or

---

[25] *Sealed Appellant v. Sealed Appellee*, No. 22-50707, 2024 WL 980494, at *2 (5th Cir. Mar. 7, 2024) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978)).

[26] *Sealed Appellant*, 2024 WL 980494, at *2.

[27] *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) (internal quotation marks omitted).

[28] *Sealed Appellant*, 2024 WL 980494, at *2 (cleaned up) (citing *June Med. Servs., L.L.C.*, 22 F.4th at 519); *see also Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 225 (5th Cir. 2020).

[29] *Sealed Appellant*, 2024 WL 980494, at *2 (citing *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021)).

[30] *Binh Hoa Le*, 990 F.3d at 419.

[31] *Bradley on behalf of AJW*, 954 F.3d at 233.

No. 23-50890

assigned a burden of proof to a party arguing that a judicial record should or should not be sealed.[32]

And finally, this presumption signifies that while the United States Supreme Court has cautioned that inspection of court records may not be used "to gratify private spite or promote public scandal" or to "serve as reservoirs of libelous statements for press consumption,"[33] a record may not be sealed "merely because it could lead to a litigant's embarrassment."[34]

**B.**

Mindful of these concerns, this court reviews a district court's ruling on a motion to unseal for an abuse of discretion.[35] "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts."[36] A federal district court abuses its discretion in sealing or unsealing documents when it "fails to identify and apply the proper legal standard" and when it "fails to provide sufficient reasons for its decision to enable appellate review."[37] A court also abuses its discretion when it "'ma[kes] no mention

---

[32] *Id.* at 225.

[33] *Nixon*, 435 U.S. at 598 (quoting *In re Caswell*, 29 A. 259, 259 (R.I. 1893)).

[34] *Sealed Appellant*, 2024 WL 980494, at *2 (cleaned up) (citing *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

[35] *LaBranche v. Dep't of Def.*, 720 F. App'x 182, 185 (5th Cir. 2018) (citing *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015) (collecting cases)).

[36] *Allen v. C&H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (quoting *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003)).

[37] *June Med. Servs., L.L.C.*, 22 F.4th at 519.

of the presumption in favor of the public's access to judicial records' and fails to 'articulate any reasons that would support sealing.'"[38]

## C.

Appellants argue that the district court's grant of Newsweek's motion to unseal should be reversed for two reasons: (i) because of "deeply valued legal principles, including the freedom to contract, privacy, and confidentiality," which lead the Appellants to believe that the alleged existence of a settlement agreement and an arbitration agreement requires the court to seal the case; and (ii) because "the district court failed to factor the spiteful, improper actions of the media, which harmed and continue to harm the defendants."

## D.

Appellants also argue that they have a privacy interest that weighs against the public interest in unsealing the record, but they did not convincingly explain what their privacy interest is or how this court should weigh that interest, and we can find no abuse of discretion by the district court in failing to properly weigh any privacy interest.

## E.

Appellants claim that Newsweek Chief Executive Officer Dev Pragad's "spite should have been weighed against the right [of the public] to access [the judicial records]" because Pragad "promised to drop a nuclear bomb on his personal enemies—and carried out his vowed vendetta" by publishing negative and defamatory articles about the Appellants. Appellants highlight the United States Supreme Court's opinion in *Nixon v. Warner*

---

[38] *Binh Hoa*, 990 F.3d at 419 (quoting *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993)).

*Communications, Inc.*, which recognizes that courts have refused to unseal judicial records merely to gratify private spite or promote public scandal or to be used for libelous statements for press consumption.[39]

The Supreme Court in *Nixon* did not hold that courts *should* refuse to unseal records when a news organization seeks to use those records to shed light on a public scandal or for non-libelous statements. It rather noted that courts *have* refused to do so when a party seeking to unseal a case has been motivated by something like promoting public scandal or libel.

Regardless, it is far from clear that Newsweek was motivated by a desire to promote public scandal or libel. Pragad's personal desires aside, the newsworthiness of the case itself remains: executives pleaded guilty to participating in a scheme to defraud, Olivet University graduate JianGang Lan has been arrested for being part of an e-commerce money laundering scheme with ties to "Olivet Entities," and 8fig has accused e-commerce platforms associated with World Olivet Assembly of fraud. These cases are newsworthy at least in part because of how they impact members of the Assembly itself, entities that contract with the Assembly, and others. They are also newsworthy given the public's interest in ensuring that courts administer justice for any wronged party.

Newsworthiness here is lighted by articles from other news organizations—including *The New York Times*, the *New York Post*, *Christianity Today*, and *Mercury News*—that have reported on legal proceedings involving entities associated with the Assembly. A naked allegation that Newsweek was motivated solely or primarily by an improper purpose, like spite or desire to promote public scandal, as opposed to its First Amendment protected right to report on a newsworthy case does not support

---

[39] *See Nixon*, 435 U.S. at 598.

a finding that the district court abused its discretion in granting the Motion to Unseal.

Appellants also argue that "Pragad's Spite should have been weighed against the right to access" based primarily on three Fifth Circuit opinions: *June Medical Services, L.L.C. v. Phillips*, *Binh Hoa Le v. Exeter Finance Corp.*, and *Bradley v. Ackal*.[40]

Appellants highlight *June*'s restatement of precedent from *Binh Hoa* that "[t]o decide whether something should be sealed, the court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure."[41] The Court in *Binh Hoa* explained in its discussion of the "line-by-line" requirement that:

> Sealings must be explained at "a level of detail that will allow for this Court's review." And a court abuses its discretion if it "ma[kes] no mention of the presumption in favor of the public's access to judicial records" and fails to "articulate any reasons that would support sealing."[42]

Appellants correctly note that nothing in the record indicates that the district court undertook the required line-by-line balancing analysis. But a line-by-line balancing analysis to determine that a document should be *unsealed* is a different matter. We require such analysis only when a district court is determining whether to seal a document for good reason: there is a presumption that a case should remain unsealed. The line-by-line requirement ensures that district courts do not seal a case without thorough

_____

[40] *See June Med. Servs., L.L.C.*, 22 F.4th 512; *Binh Hoa*, 990 F.3d 410; *Bradley*, 954 F.3d 216.

[41] *June Med. Servs., L.L.C.*, 22 F.4th at 521 (cleaned up).

[42] *Binh Hoa*, 990 F.3d at 419 (citation omitted).

analysis—this, a vindication of First Amendment guarantees. But that exercise is not essential when the question is whether to unseal a document.

Next, Appellants cite to our opinion in *Bradley*, which implied that if keeping settlement terms confidential was a factor in the parties' decision to settle, this should weigh in favor of sealing the settlement.[43] But here, Appellants have cited to no evidence that keeping the settlement terms confidential was a factor in the parties' decision to settle. Its purpose was to facilitate the settlement negotiations. And even if the Appellants had provided such evidence, that would only weigh in favor of keeping the terms of settlement sealed, not the entire judicial record.

Neither *Nixon* nor Fifth Circuit precedent allow this court to find that the district court abused its discretion in unsealing the instant proceeding. Indeed, the able district court here preserved a cherished constitutionally protected freedom—the First Amendment.

## IV.

The district court's order granting Newsweek's motion to intervene and motion to unseal the proceeding is AFFIRMED.

---

[43] *Bradley*, 954 F.3d at 228.